16-0706 Michael Jankovich v. Illinois State Police, F.L.I.S.T. May it please the Court, I'm C.F. Schellis, S.A.E.L.I.S.T. I represent Jankovich. Mr. Schellis, good morning. My name is Mary Labreck. I'm an assistant attorney general here representing the Illinois State Police in the concealed carry and licensing review board. All right, Ms. Labreck, good morning to you. Good morning. So we typically allocate 15 minutes per side. We can be flexible about that. Mr. Schellis, you want some time for rebuttal, I assume? Yes. Very well. All right, Mr. Schellis, the floor is yours when you're ready. May it please the Court, I appreciate the opportunity to speak to you briefly. Judge Jacobius got it wrong in his opinion and says that the right to concealed carry is not part of the Second Amendment. Are we looking at Judge Jacobius's opinion or are we looking at the administrative agency's? Both. And the reason I say both is when we review the administrative agency, I understand there's some deference due, but that deference is only to decisions that they've made of findings of fact. The administrative agency didn't make any findings, which is one of my problems here. They take a box of documents from the Illinois State Police Board, they give it to the concealed carry board, and the concealed carry board says, we find he does not meet safety. They don't make any findings of fact or apply the law and say these facts are true. And one of the examples we used in the brief is the gentleman was acquitted on one of the charges. And so in their brief they said, well, we should consider this charge. Well, they don't make a finding of fact that said we considered an acquittal or why they would do that. Secondly. They gave you an opportunity, they gave your client an opportunity to respond, did they not? Yes, but I would emphasize that that would switch the burden of the constitutional right to us. In other words, what they're saying is under the statute, if we meet the standard, a license shall be issued. We met the standard of the six elements. They're saying, or their argument is based on your question, that if we give you these facts, you must disprove them. That seems to me to reverse the constitutional standard. We have a right to concealed carry. They have the burden of proof under the statute, right, to determine by a preponderance of the evidence whether there's a danger or a threat to public safety. That's what the statute says, right, that the board has to find by a preponderance, not you have to disprove. So the burden is with the board, right? Yes. Okay. But they can give you an opportunity. If they had not given you an opportunity to present any relevant evidence or to argue the evidence, I would imagine you'd be standing here saying they didn't even get to give us a chance to speak. Well, they did give you a chance to present whatever relevant evidence you had, right? When the statute changed or the administrative rules for the statute changed, they remanded it back. Right. The problem is what does that standard mean? How do we disprove that standard? In other words, public safety, I argue, is absolute discretion by the state. How do I disprove that? Well, the first step is to deny that I did these things that are alleged in this report. But the problem, Your Honor, is that under the six elements that they say they will give us a license, using the word shall, one of them is they won't use leads, which is a computerized version of criminal events. Well, that's directed to the other agencies. It's not directed to the ISP, is it? Well, it's supposed to be inadmissible under any circumstances, under the rules. And, unfortunately, it's in there. And in the Attorney General's brief, they essentially say they didn't consider it. But we don't know what they considered because they don't tell us any findings of that. So if you can't consider leads, leads is the whole rap sheet throughout the state, correct? Right. So what would the purpose be of precluding them from looking at somebody's comprehensive rap sheet? Because that's how the administrative rules work, that they can't use leads because it's triple and quadruple hearsay. We aren't talking about convictions. We aren't talking about charges. We're talking about desk reports from policemen 30 years ago. Well, we're talking about arrests that are more than 30 years ago. We're talking about significant issues. And are you saying that because they didn't bring in the witnesses to testify, that was all error? No. What I'm saying is that if you're telling us these are the six standards and you have five years for a felony and related items, that if then you go back 30 years to look at what, not even charges, we're talking about desk reports, for instance, from policemen of somebody said something 30 years ago. How are we ever going to disprove that? We can't. And the fact is... Well, sure you could. You had a notice of all those police reports. You could have called your client and had him deny any of it. That never happened. There were ways to refute the allegations that came forward. The problem is that we can't really refute them except to deny them. But the problem is, in the first place, we're being told this is the standard. We meet the standard in the application, and then they say we're going to change the standard. But those are actually automatic disqualifiers that are in the statute. Yes. But they also have another disqualifier, and that is if the court makes the determination of danger. And here we have not only the things that happened 20-something years ago. We also have some more recent allegations. That evidence was presented. The board could say, okay, we have a conflict here. We have a problem. We can schedule a hearing. But here your client did not deny that he participated in those reports, but basically said I'm not automatically disqualified based on the other factors. I agree. But the problem is, what does that standard mean? How do we ever deny and then not meet that standard? And let me give you an example. Let me say this. You would have a stronger case if your client said in the affidavit, I didn't do this. Then you're going to have to review the board's determination of dangerousness. Here it's basically admitted that he did the things in the recent reports. Essentially. So if we look at that, there's a basis from which we can review it and say they're right. But the problem is, what if you turned it around the opposite direction? In other words, what if you three looked at it, looked at the facts, and said they're wrong? Let's just say, for example, maybe not this case or any case, what would be the basis for the appellate court to look at it and say, I looked at these facts and they're wrong, and it wasn't dangerous? We would say if he had denied it, we would say perhaps a hearing ought to have been scheduled. Then we'd read the testimony to see if the testimony is against the manifest. Well, we have a different standard. And I understand that, but I guess my problem is, in reversing the situation, how can you ever find that somebody is not dangerous unless we know what the parameters are? In other words, they're telling us this dangerous standard. What does that mean? And if it was the opposite? Well, we could do a hypothetical here. All right, he's arrested for beating his wife. He comes in and testifies. The only reason she did that is because she found out I had a girlfriend. There's nothing to contradict that. Yet the board finds him dangerous in spite of that. Then that would be a basis to question the judgment there. But the problem is, in that scenario, the board would be due deference on findings of fact. So if they said we don't believe you, then they would be due a lot of deference on findings of fact. But then you'd get a live testimony versus a hearsay, and we'd have grounds for reverence. Well, of course, the only thing they did give us is sometimes triple and quadruple hearsay because most of these allegations, including the acquittals, which I totally can't understand using against him, were things that somebody said and the police decided not even to charge him, much less bring him in on some of those charges. But the problem is the board doesn't look at these and then say, we consider this, this, and this. We make a finding of fact of this and this, and that doesn't meet the dangerous standard. But they don't do that in these cases. And that's vital for us, it seems to me, under the Constitution, that they do that. Because the dangerous standard, if we look at the old case we all read in law school, which was the Supreme Court justice saying I look at pornography and I know it when I see it, that can't be the standard here because we have a right to keep and bear arms. And that right is our right before the board exists. I understand there are cases that have come down that say we regulate that right and you have to meet certain standards. And I understand that. I'm not quarreling with that obvious constitutional point. But once we've met the beginning part of the standard, for them to say dangerousness, what does that mean? And the fact is it means something different to the three of you. The council of agencies do that every day. I mean, they'll have a standard in statute, and no standard is perfect. Every standard has some wiggle room or the three of us would be out of a job. So would you probably. There's some wiggle room in any statute and an agency will review conduct and say, does that meet the standard? And then both sides put forth whatever evidence they have. The board makes their decision. Then the courts review it under whatever standard is appropriate. Clearly erroneous manifest way. You know, is dangerousness a perfect word? Of course it's not a perfect word. But the first, we have to do this in increments, don't we? We start with the agency saying, okay, here's the standard. Now let's get all the proof we can. We get the proof from the objecting agencies, right, because if there's no objection, the board isn't even doing anything. Their whole being is just to resolve these objections. So they get an objection and say, okay, now we've got this. Under the new rules, they now, thankfully, will turn to the applicant and say, okay, now it's your turn. What do you have for us? And then once that's all put together, they say, does it meet dangerous? Does it meet threat to public safety? The problem is. Why is how this is working any different than how any agency would work? Because the threat to public safety in this situation is a standard without any parameters. The constitutional standard is, does it leave absolute discretion in an administrative agency to deny your rights? And the case we cited says, and Judge Jacobia said, there's always going to be personal wiggle room when an administrator makes this decision. And I agree with that. But there's a difference between some wiggle room and a personal decision and something that has no parameters. There are no parameters for that standard. What does it mean? And how do we conduct ourselves to know when we apply for the license, if we have any reasonable chance of getting the license? It's an expensive process. It's about $1,500 to take the test. You know, we take the class with people. It takes two or three days. Then you go through the six factors. And if you were to consult a lawyer, which you shouldn't have to do, but if you were, and you say, okay, I meet these six factors. They should give me a license. Well, that's if you only read Section 25. And then if you read Section 10, you realize the state police can also deny a license if they're determined to be a danger. I mean, if you read Section 20, you'd say, oh, law enforcement agencies can object. I mean, my argument supposes that you read Section 25. I think that's all I have to read. I do these six things. You know, as Justice Howe said, those are the initial disqualifiers. No, I agree. Okay, so. No, I agree with that. But the problem is once you get to the six disqualifiers and you pass that test, then you have to examine as a person applying for a license, do I meet the dangerous standard? What does that mean? For instance, what if they had said we're going to consider allegations even if there's not a conviction that 30 years is part of the dangerous standard and if it involves violence? But they don't tell us that. They don't give any parameters to that standard. Another example is. What should they have done? That's an example. They should have said we're going to consider charges against you that go back an unlimited amount of years if they involve, let's say, allegations of violence. But they don't tell you that. And that, to me, is important to establish a standard. I realize, as you said, there's always discretion and there's always wiggle room. But there has to be some parameters that they tell an applicant of what's to be considered. They're not lawyers. And it's supposed to be a process they do without a lawyer, frankly. Okay. Well, then let's drill it down to this case. We're speaking sort of generally about it doesn't give a. But in this case, your client, there were just allegations. We all understand he wasn't convicted. But the allegations include beating someone with brass knuckles. Right. Threatening to put someone in a wood chipper and bury him six feet underground. Correct. Break their legs. Do you think a reasonable person, knowing that that is in their recent past, not 30 years ago but two years ago, three years ago and four years ago, respectively. I think I flipped them. But those were all from 2010 to 2012. He's applying in 2014. Do you think a reasonable person in your client's shoes, getting ready to fill out that application, would think to himself, that stuff might fall within the rubric of danger or threat to public safety? I would have to answer maybe, and here's why. It still reaches the issue that the administrative agency doesn't make a finding of fact that the allegations are true. When they vote by Internet, I guess they do it by an Internet procedure, they don't say, we're finding these facts to be true, and therefore he's a threat to public safety. They never say that. And I realize that's a technicality, but it seems to me it matters. When you show deference to an administrative agency, is that they make that finding. They never make that finding. You're assuming that allegations are true because we didn't rebut them. But I don't know that that's correct. Would that be a rational response from a board member to look at these rather disturbing allegations and then look at the other side and say, wow, they didn't even say anything. If the board then responded to those events and made a factual finding, we find these allegations more probably true than not. And because we find them more probably true than not, we're going to deny the license under public safety if that standard is constitutional. That would be something else. But that's not how they operate, and that's not how they operated here. They didn't make that finding. And it seems to me crucial to the fairness and constitutionality of the process. They have to make that finding. They did make a finding that he was a danger to himself or others and a threat to public safety. They did, but they didn't. You're saying they didn't support their finding. Correct. And the deference that's due to an administrative agency is to make a finding of fact. The usual way that we have administrative reviews in chancery is the administrative agency says, we've gathered these facts. We find, for whatever reason, whether uncontested or contested, fact A, fact B, fact C is true, and therefore it meets standard X. That's not what the concealed carry board does. They don't say, we've received this box of documents, and we find these facts to be true, and therefore it meets this or that standard. They never do that. And that seems to me the crucial problem with this process is that they never make the findings. And I realize, looking sort of beyond your question, you may say to yourself, come on, you know, they would have found these facts to be true anyway because they're uncontested. But they didn't. And that's a crucial problem when we're talking about a constitutional right. Because this is not a driver's license. And one of the cases that my little friend, the Attorney General, cited relates sort of to a driver's license type situation, which is a privilege. This is not a privilege. It's clearly a right. And Justice Jacobius in looking at the whole situation as a whole started with the idea that we don't have the right to carry. Of course we do. There's really no doubt about that. And that's an important thing that the court should consider. I would emphasize that the courts have said since Heller when this all came down to light, it became this more, I guess, differently recognized right, that there are categories of people who can be kept from firearms. They specifically said felons and the mentally ill. The Illinois Supreme Court has added minors to that list in Aguilar. And they've added minors referring to this idea that there are categories of people who pose a danger, who are deemed to pose a danger. That's literally the words they use, pose a danger. It's almost as if this standard was lifted from that line from Aguilar. So if they are saying, if we have a standard here that says people who are deemed to pose a danger don't get guns, and you're saying that's not a good enough standard, isn't that pretty much in line with what the Constitution has been interpreted to? No, I agree with the first sentence that you gave and not the second. Okay. I agree that they could set up a procedure with certain categories of persons and say, these are the parameters of categories of persons or conduct that do not meet public safety. But they don't do that. I agree with the first sentence. They could set up a system that says this is the category of person or conduct that does not meet public safety in this state, and we're not going to let you have a concealed carry license. They could do that. But they didn't. They didn't do that. Well, no. Instead of setting up per se categories, they've said we're going to consider each case by its facts. But the problem in general, that leads to absolute and unfettered discretion by the board. That's the constitutional problem I raise that I disagree with. The first part of your sentence, I 100% agree. That's what Heller says, and that's what the Ohio Supreme Court says in subsequent cases. We can set up categories of persons and categories of conduct, and it can be a wide-ranging standard. It doesn't have to be an iron standard, but it does have to give some guidance to the administrator and to the person applying for a license. Without that guidance of conduct of persons, it seems to me the standard is unconstitutional and inappropriate because it gives no guidance, and it allows the administration or the administrator absolute and unfettered discretion. And you don't think a former federal judge, two people who are former DOJ attorneys, three people who have at least five years' experience as federal agents of some kind, and at least one experienced licensed clinical physician or psychiatrist, you don't think that they have the ability to determine whether someone is a danger? Do you think that that standard is just completely lost on them? They just have... They are skilled people that I respect, and I am not showing them disrespect. No, I understand. But being a skilled person does not still answer the constitutional question of whether skilled people are using a standard that a person who applies can understand, both in conduct and in personhood. I agree that there are people we respect. I don't know them personally, but I'm sure there are people we respect. But, Judge, Justice Ellis, the same thing would apply to a justice or a judge. I respect justices and judges, but I still want there to be standards that you decide upon which to review. The standard can't be this person is a good judge or a good justice or a good administrator. My point is simply they all have experience with the concept of danger and threats to society. I agree, but the problem is the skill of the person deciding the case doesn't change the fact that there's no standard for him to apply and no findings of fact that they make. There's a simple fix to this, it seems to me, a constitutional fix, which in answer to Justice House Ann, your example, is if they would make findings of fact, explain them, and decide how they don't meet the standard, and if the administrative rules, which they have changed to make more fair to us, were changed to make sure that the standard of dangerousness in terms of conduct and person, whether it's felonies or whatever, is explained to the applicants. And again, the example I gave is the perfect one. We're going to consider you a danger if you have charges of a violent nature that go back an unlimited amount of time. We're going to consider you a danger if there's a gun charge of no matter how much length. And that they could write that in an administrative review that would be fair to the applicants. But they don't do that, because to me the standard that exists relies, as your Honor sort of stated, upon the goodwill and the excellence of the people on the board. With all the respect to the goodwill and the excellence of the people on the board, it seems to me the constitutional standard must be, when we have a Bill of Rights issue, that you can't have absolute discretion without parameters. That is the constitutional issue. Are you arguing that the statute that's written is facially unconstitutional? Without regulations that give us parameters, yes. It is facially unconstitutional because it gives absolute and unfettered discretion to decide what that standard means. With no parameters to the applicant. It's particularly facially unfair because we do meet the first step. You know, you're telling the applicant a license shall issue if you meet this standard. It then goes on to say there's a savings clause in the other section where we're not really going to issue the license because you don't meet this standard. But the problem is, why do they give six specific points in the first part and not give specific points in explaining the policy? Because the first six are things that you automatically have to pass from the state police background check. The second thing may never happen because the law enforcement agency may never object. It's only if they object that we even have the conversation about posing a threat to safety. And the question is, when they object, how do we review that standard? And in my view at least, in the view of our brief, that's not appropriate because they don't give any parameters. There need to be some parameters. And they certainly could write an administrative regulation that would be constitutional to give parameters. Otherwise, we're relying on the excellence of the board and they may be very bright people, but they still have no standard. I realize my time is running out. Thank you. We'll give you some time for rebuttal. Good morning again, Your Honors. Plaintiff's basing his claims on the fact that he has a right under the Second Amendment and that it is fundamental. But as Your Honors have already noted, the United States Supreme Court has held that even fundamental rights are subject to reasonable regulation. And the Act is a reasonable regulation. It requires the board to find ineligible for a concealed carry license an applicant who poses a threat to safety. And that applicant is either a threat to himself or others or is a threat to public safety. Ms. LeBrecht, can we talk about the admission of the hearsay document? Clearly all the police reports with the unverified allegations in them were admitted and were used to find the applicant was a danger. Do you agree that those are hearsay documents? I agree that they involve things that meet the classical definition of hearsay. But we have two issues here, and both of them are satisfied in this case. The police reports and the criminal history reports are statutorily admissible, as this court noted last year in Perez v. the Concealed Carry Board. And the board drew reasonable inferences from that evidence, which satisfies due process. Because admission of hearsay implicates due process only when the information is unreliable. This doesn't mean that the board is entitled to consider any hearsay it wants and that it must take everything in a police report as true. But there is a first layer of hearsay in these documents, which is present because the police officers are not being called before the board to testify in person. But that level is excused because they're records of a public agency pursuant to a duty to report. It's similar to the rule of evidence 803 subsection 8. And so those are sufficiently reliable that the rules of evidence allow them, even if the declarant is available. The applicant is alleging that he has a constitutional right to carry these weapons, that the board made a determination that he was unfit to carry a weapon without making a finding of fact. You know, any restriction on his right is subject to intermediate scrutiny. If the board is not required to make a finding of fact, how can we be certain that their decision, how can that decision be reviewed? I have two answers to this. One is that the intermediate scrutiny standard is not related to the individual decision-making process. That is related to the constitutionality of the statute itself. It has to do with the means and the ends of the statute, whether the ends are an important government interest and whether the means are sufficiently tailored to those ends. But our view with respect to the adequacy of the decision is that the basis of the board's decision is sufficiently clear, because there's only one way that the record can reasonably be viewed. There are no credibility disputes, as Your Honors have noted, and there's no evenly balanced evidentiary questions. In addition, it is presumed that the agency considered all of the evidence before it and we know what the agency considered. Considered the objections. Counsel, doesn't it seem a little unfair that you've got someone on the one hand who has a constitutional right to carry a concealed weapon? You agree that's a constitutional right in the abstract, right? Yes. Okay. And then here comes this process where there is no live testimony. There is nothing but hearsay evidence, just a bunch of reports. One conviction in his background. I think 18 arrests, only one conviction, and it was criminal damage to property and it was in the early 90s, I think. Everything else is just allegations. Maybe true, maybe not. It's true that the board gave the applicant a chance to refute it and he punted. That's true. That's a mark in your favor. But we are still denying a constitutional right based on just a bunch of unproven, unsworn hearsay documents and nothing else. Your Honor, it is not quite as bad as that because there's a number of factors that make this evidence reliable. One is the number of allegations involving violence or threats of violence. And this is a period of time spanning 30 years, as he said, in which he has been, if not exactly consistently, at least there have been allegations against him of violence or threats of violence throughout this entire period. There's been corroboration in some respects. The police officer who spoke with the victim of the brass knuckle attack saw the swelling, saw the damage to his face. Yeah, but the corroboration is hearsay also. Well, it's hearsay, but that's hearsay that falls within the public report. That is reliable because there's no evidence of bias. The police officer wrote that as part of his report. And so that is sufficiently reliable. To pass due process. And there's not a whole lot of corroboration, but we put these things together. And when you put all those things, and the fact that the allegations involve different victims and different reporting officers, and when you look at how similar the last three allegations are, they involve similar conduct and they portray the applicant as a similar sort of person, and they're entirely consistent with the 1991 conviction, which was for criminal property damage, but it started as arson and assault and was apparently pleaded down to criminal property damage. And then the adverse imprints from the fact that he has not denied any of these things. When you put all of those things together, a reasonable person would say that that might not meet the criminal standard, but it's sufficient for preponderance of the evidence to show this person is dangerous. And sufficient to allow the state to protect the public by denying this person license. If a board, if a regulatory body is going to deny someone a constitutional right based on when all they have to go on so far is a bunch of hearsay documents, shouldn't they at least hold a hearing? Well, he had a hearing. He had an opportunity to express himself. It was a documentary hearing. He did not have an in-person hearing. Right, but the board can do a live hearing. They can. And shouldn't they have done that hearing? Well, he gave them no reason to do it because a hearing was about resolving factual disputes. He didn't identify any factual disputes. He did ask for a hearing, but he gave them no reason why they should. And even on appeal, he doesn't identify any evidence he wished to present or wished to challenge the ones unable to because he didn't have an in-person hearing. And an in-person hearing is not constitutionally required. And it would be difficult, it would be a difficult administrative burden because it would require police officers coming in to testify and various other people, and it's not necessary on this record. We'd have a different case if he had presented the board with a solid reason why they should or why due process required it. But he didn't. Aren't there a lot of cases where we require hearings as a matter of procedural due process before a constitutional right is denied? Well, there are a lot of administrative cases in which we routinely provide hearings, and this is its – No, I mean as a matter of judicial fiat. Haven't courts said there are certain constitutional rights that before any deprivation occurs or even after the deprivation occurs, they're entitled to some kind of a hearing? Well, some kind of a hearing, yes, but some kind of a hearing doesn't mean some kind of an in-person hearing. It means whatever kind of hearing is necessary to get back the facts. If there's a factual dispute to resolve those, if there's a credibility determination, then you need to. And a lot of administrative rules require hearings just because it's easier. That way you're sure that due process is taken care of. And so we don't do that because of the administrative burdens, but the rules do provide for the board to be able to hold an in-person hearing when it's necessary. It just wasn't necessary in this case. To say a word about vagueness, there are two concerns animated in the vagueness doctrine, and that is whether there is sufficient notice of prohibited conduct and whether the standard is sufficiently restrictive to prevent discriminatory or arbitrary enforcement. And there's no problem with either of these. There's no notice problem because there's no risk that the plaintiff will be killed in the exercise of his Second Amendment rights. He cannot inadvertently violate the act. It is clear that he cannot exercise the right until he obtains a license. And once he obtains a license, he may safely exercise that right until it expires or is revoked. Now, to the extent that he doesn't know precisely what conduct will be considered dangerous, his criminal acts may be chilled. But that is not a kind of chilling that we are concerned about because the Constitution protects only his right to engage in lawful conduct. And the dangerousness standard also adequately constrains the board's exercise of authority because the context of the act makes it clear what kind of danger they are concerned about, the danger that licensing the applicant will result in someone getting shot. And he says it would have been so helpful if they had said that they would consider acts of violence. But I think that's obvious to anyone that the more acts of violence you have in your record, the more likely it's going to be that you're going to be considered a danger. And there are innumerable factors and combinations of factors that could warrant a finding of dangerousness. And there's no way that the General Assembly, the ISP, or the board can specify them all in advance. And the Constitution does not require mathematical certainty, as the Illinois Supreme Court has said. Well, couldn't the board have spelled out a little more clearly why they did what they did? In their decision review? They could have. Our view is that it was not constitutionally necessary that they do so because it was sufficiently clear, because it's presumed that they considered all the things that were before them. And it is reasonable to assume that they applied all of the factors that they relied on factors that supported their decision. And we never require that an administrative agency specify all the possible factual findings. He wants them to talk about acquittals and make clear that they didn't give those acquittals more weight than they should have. But we never require an administrative agency to nail down every last thing. But they didn't nail down anything. I mean, we usually expect agencies, they may not give every reason. They might not say, well, on the one hand, we see this. On the other hand, therefore, we conclude it X, Y, Z. But they usually spell out, this is all the evidence that we considered. And then sometimes they give very detailed findings. Sometimes they give more curt findings. But here we don't really have anything, right? I mean, we've got, we can see what the objection was. They said, okay, Mr. Jankovich, what's your side? He didn't really say anything. And then they said, okay, you're found to be a danger. How do we know which things moved them? How do we know, we should just assume that everything together? I mean, it's very difficult to know what was going through the board's head. Yes, it is. It's reasonable to assume that they looked at all of the factors and that the combination of the factors to them justified this finding. And all that information is available in the record to us. And we know what its conclusion was. And so it might have been desirable to write a little bit of a clearer decision. But we believe that this was sufficient because it was sufficiently clear. Plaintiff's argument about procedural due process is also misguided. The argument is forfeited because he didn't raise it before the hearsay and things like that before the board in the first place. And he also failed to develop an argument addressed to the Matthews v. Eldridge factors. And this court rejected an argument for similar reasons in the Prez decision last year. Due process is a flexible concept that requires the court to consider the private interest that will be impacted. Counsel, at what point would he have objected? There was no hearing, right? When they objected. When would he have objected saying, I'm being denied procedural due process? Or when would he have objected saying, hearsay, I object? In the letter that he wrote through counsel in which he apparently realized he wasn't going to be automatically granted a hearing because he asked for one. That would be the time to say, look, I'm concerned that I'm not going to get my rights here. I think I need this. But how did he know that? I mean, he was not told in that letter to put his best foot forward on the entire case. He was told in that letter, pursuant to that rule, to provide us any relevant evidence within 15 days. He wasn't told to provide any other legal arguments you may have or any objections you may have. He was just told, this is your chance to give us your evidence. This is true, but that letter could be read in the context of the entire act and the regulations, which don't specify that there will be a later hearing. And he was counseled. And counsel should have been aware of that fact, that there wasn't going to be something later. He could have asked about it. He could also have, as Your Honors have suggested, denied it or given them reasons to doubt. If he had, the board might have on its own said, because the act specifically provides that it may ask for more information. The board might have asked for information if you'd given them something. But he didn't. And... Maybe he thought he was going to get a hearing. And then all of a sudden he gets something in the mail that says, oh, you're done. You're out. Sorry. No gun for you. That wasn't reasonable given the statute and the regulations, though, for him to assume. I'm just not really sure about this whole thing of forfeiting in the administrative agency. There was really, you know, I'm not really sure when he was supposed to do it. Okay. Well, we don't really need the forfeiture issue because his claim that... I agree. I agree. I don't, that's not, I don't... Because... Did you raise that argument in your brief that he forfeited below? Yeah. Did you? Quickly. Yeah. And because, I mean, due process, he doesn't have a due process argument here because, as Your Honors have already suggested, he hasn't alleged that there were any errors. Due process is about safeguards against error. If he doesn't allege that there's any error, he can't have a due process claim. And let's say just a little bit about the scrutiny analysis under the Second Amendment. That wasn't briefed by the parties. And he uses the words intermediate scrutiny and narrowly tailored, but he doesn't do the kinds of means and ends analysis that the doctrine requires. And so I didn't discuss intermediate scrutiny in this brief because he seemed to be attempting to talk about vagueness through these means. We did fully brief the issue of the level of scrutiny that applies in another case that is currently pending before this Court, Michael White v. ISP, which is No. 116-1282. To the extent that this Court is interested in this issue, we do agree that intermediate scrutiny applies. We know it can't be rational basis scrutiny because the Illinois Supreme Court said in Heller that if it were, it would be redundant because there are separate constitutional prohibitions against irrational laws. But we believe the standard is satisfied because the test under intermediate scrutiny is usually characterized as whether the government can demonstrate that the challenge restriction is substantially related to an important government interest. There's an important government interest here that's clear, and this Court has said as much in its decision in People v. Fields where it held that promoting and ensuring the safety of the general public and police officers by limiting the accessibility of firearms in public to a less responsible or less mature group of people constitutes a substantial or important interest. What's the name of the case? People v. Fields. Fields? Yeah. Moreover, the act is not simply substantially related, but actually nearly tailored to give maximum protection to the applicant's rights because rather than relying on a trainer that will buy the license in every instance, they give them individualized consideration which allows them to present mitigating evidence and evidence of changed behavior. He has an opportunity to present any evidence he wants, and the evidence is reviewed by an expert body with experience in criminal law and practice and in mental health issues so they know what value to assign it. Plaintiff has not suggested any other way in which the state could capture the value of the information contained in the law enforcement records at a lesser cost to his rights. He simply asserts that the state is bound to assume that people who satisfy the criteria of Section 25 of the act will present no danger to themselves, others, or the public, but he points to no authority that suggests that the state is so limited in its ability to protect the public welfare. With respect to the remaining issues, if this Court has no more questions, we will stand on our leaf, and we urge this Court to affirm the Circuit Court's judgment, thereby upholding the Board's determination that the plaintiff posed a danger to himself or others or is a threat to public safety. Thank you very much, counsel. Thank you. Very briefly, although Justice House asked the question, what inferences did the Board draw from the facts or the objection? And we don't know what inferences they drew, because they don't tell us. There are no findings of fact that indicate they drew this or that inference. We don't know if they considered the acquittals. We don't know if they considered leads. We don't know what they did, because they don't tell us. The trial judges convict people and don't say why? But this is an administrative issue. Administrative agencies make findings and don't say why? Well, we're not even sure they made a finding. They just said, Oh, they made a finding. But they didn't make a finding of fact. They made a finding that they concluded he was not safe. Right. They didn't make a finding of fact. And I agree that you – But does the law require an administrative agency to give the reasons? Without a finding of fact, the decision of the administrative agency is usually not given deference. Deference is due to the findings of fact, but we don't have any here. And here, because it's a constitutional right, facing your question that you asked my roommate friend, I think it is important that they give a finding of fact, because we're talking about interdiction of a constitutional right. Without a finding of fact, they interdict the rights, and it seems to me it's essential that they make that finding of fact. Secondly, Your Honor asked – Justice Ellis, you asked a question about the procedure when you object. Is there a procedure set up that you can say I want a hearing or an evidentiary hearing or how the objection procedure works? And I don't think applicants are really told that. I'm a lawyer. Well, you're not supposed to have to have a lawyer to go through the process. And it's an opaque process, as Your Honor implicated, where you don't know these things. There is an administrative way that they could set up that tells us, as applicants, you have a certain amount of days to respond to the objection. We have an evidentiary procedure to allow an evidentiary hearing if you need one. But they don't tell you that, and there is no procedure for that. And that seems to be essential to have a fair procedure. The third point that – Counsel, you didn't ask for a remand for additional findings by the board, did you? Or a remand for a hearing. I mean before this Court. No. Before this Court. No. You're not asking for a remand for a hearing or a remand for additional findings by the board. You're just asking us to strike it all down, right? It's okay. I'm just trying to make sure I understand what you're saying. I suppose if this were a state court I would ask to amend my findings or I'd have my prayer. I think in the alternative that would be a fair proceeding. But I am asking you to strike the procedures down because it seems to me that – to cut to the chase, what if you were to strike the proceedings and say this is an unfair procedure, but in the back of your mind say, this man would never be able to meet the standard if there were a proper standard. The problem is there is a constitutional issue here that they ought to meet the proper procedures. And if he fails in a fair procedure with findings of fact, an opportunity to be heard, and a proper procedure, that's too bad for Mr. Jenkins. But we aren't there yet because the procedure isn't appropriate. Lastly, and I know we only have a few more minutes, one of the questions was applying the facts to the law. Did they apply the facts to the law and how did they do that? We don't know because they don't tell us that. For all these reasons, we ask that you reform the process and we thank you for your time. Thank you, Mr. Schelles. Thank you both. It was very well briefed, very well argued. We'll take it under advisement and stand adjourned.